UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHALONDA GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 2:07-cv-371-WKW |
| ) | |
| MOBIS ALABAMA, LLC, ) | |
| ) | |
| Defendant. ) | |

## ANSWER

**COMES NOW** the Defendant, **MOBIS Alabama, LLC (hereinafter referred to as "MOBIS")**, and responds to the Plaintiff's Complaint as follows:

## JURISDICTION

1. MOBIS admits that Plaintiff seeks to invoke the statutes cited in Paragraph 1 of the Complaint, but denies that it has violated any of such statutes and denies that Plaintiff is entitled to any relief thereunder. MOBIS admits only that this Court has subject matter jurisdiction.

2. The allegations in Paragraph 2 of the Complaint are denied pending confirmation in discovery.

3. Admitted.

## PARTIES

4. Admitted upon information and belief based on MOBIS' last knowledge of Plaintiff's circumstances.

5. Admitted.

1092298

## NATURE OF THIS ACTION

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. Denied.

## FACTUAL ALLEGATIONS

12. All allegations of Paragraphs 1 - 11 of the Complaint are denied except as specifically admitted above.

13. Admitted. Plaintiff's official title was Assembler.

14. Denied pending verification in discovery. MOBIS does not know how far along Plaintiff's pregnancy was as of August 25, 2006; therefore, the allegation is denied.

15. MOBIS admits only that Plaintiff's employment was terminated on August 25, 2006. The remaining allegations of Paragraph 15 of the Complaint are denied. In further answer to Paragraph 15 of the Complaint, MOBIS answers that Allen Flynn, MOBIS' Production Manager, met with Plaintiff and others for purposes of informing her that her employment was being terminated, but Flynn does not make final decisions on terminations, MOBIS' Human Resources Manager, Tracy Riedler, does.

16. Denied. As will be shown to the Court, Plaintiff's employment was terminated because she consistently used improper and destructive work techniques (jerking diagnostic wire connectors apart while holding the wires, not the plugs) which damaged parts and could have

posed a safety risk to the ultimate owner of the automobiles produced by Hyundai to which MOBIS is a first tier supplier of chassis and cock pit assemblies. Plaintiff was counseled several times about her improper and destructive work techniques and other performance issues, but her performance failed to improve.

      17.    Denied. In further answer to Paragraph 17 of the Complaint, MOBIS incorporates its response to Paragraph 16 of the Complaint as to why Plaintiff's employment was terminated. These were the reasons Plaintiff was given as grounds for her termination, not her pregnancy. Upon meeting with Flynn and others on the morning of August 25, 2006, to hear MOBIS' grounds for terminating her employment, Plaintiff immediately became unruly and verbally abusive. Plaintiff would not let Flynn speak without interruption and refused to accept responsibility for her performance problems and violations of work rules. Plaintiff unleashed a loud, vicious tirade of vulgarity directed at those present and MOBIS in general. Plaintiff called those present "m--ther f--ckers" numerous times. Plaintiff described MOBIS' concerns about her performance issues as "b--llsh--t." Plaintiff accepted a personal call on her cell phone in the middle of her tirade, and told the caller in the presence of all at the meeting "they are firing me for some m--ther f--- cking b--llsh--t." She also threatened to take out an arrest warrant against a co-worker. *See* Exhibits "A" through "C" for verification of the nature and extent of the vulgarity and verbal abuse to which Plaintiff subjected her superiors and MOBIS before being escorted from the premises under warning that MOBIS would call the police if she did not leave. Even if MOBIS did not have grounds for terminating Plaintiff's employment based on performance issues, which it clearly did, MOBIS had grounds to do so immediately thereafter due to her vulgar, insubordinate outburst.

      18.    Denied.

## COUNT I - SEX DISCRIMINATION

19. All allegations of Paragraphs 1 - 18 of the Complaint are denied except as specifically admitted above.

20. MOBIS admits that Plaintiff, as a female, is in a protected group and that during her pregnancy she was in a protected group. MOBIS denies that Plaintiff was pregnant at all times material hereto.

21. Denied. MOBIS repeatedly counseled Plaintiff about her performance deficiencies and she refused to improve.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. All allegations of the Complaint, not specifically admitted above are denied.

27. MOBIS denies that Plaintiff is entitled to any of the relief she requests and avers that she should take nothing in this cause.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The statute of limitations bars some or all of Plaintiff's claims against MOBIS.

### SECOND DEFENSE

The claims in this complaint may not be brought pursuant to 42 U.S.C. § 2000e unless and until Plaintiff establishes timely and proper satisfaction of the administrative prerequisites to the institution and maintenance of an action under such statutes as to all defendants. To the

1092298

extent that Plaintiff raises claims not made the subject of the EEOC charges she relies upon in the Complaint, or alternatively, not made the subject of a timely signed, verified EEOC charge naming Defendants as a respondent, or raises claims that arose more than 180 days before the filing of a EEOC charge, those claims are barred by the failure to satisfy the statutory prerequisites to suit. Any and all claims not raised in a lawsuit timely-filed within ninety days of the Plaintiff's receipt of a Notice of Rights letter from the EEOC may not be litigated in this action.

### THIRD DEFENSE

Some or all of Plaintiff's claims fail to state claims for which relief can be granted.

### FOURTH DEFENSE

There are no similarly-situated male or female employees who were not pregnant who have received lesser or different discipline than did Plaintiff for similar offenses.

### FIFTH DEFENSE

Plaintiff has failed to mitigate her damages, if any.

### SIXTH DEFENSE

All employment decisions made by MOBIS respecting Plaintiff were made for legitimate, non-discriminatory, non-pretextual business reasons. MOBIS denies that Plaintiff's gender or pregnancy were substantial contributing factors in any decision regarding her employment, including the decision to terminate her employment.

### SEVENTH DEFENSE

Assuming *arguendo* that Plaintiff provides some evidence that she contends establishes that an adverse employment action taken against her was motivated in part by gender or pregnancy, MOBIS claims the *Price Waterhouse/Mt. Healthy* defense because it would have treated Plaintiff the same in all respects for other legitimate non-discriminatory, non-retaliatory,

non-pretextual reasons. Some or all of the decisions and/or employment actions challenged as discriminatory in the Complaint would have been taken even if the Plaintiff had not been in a protected class of individuals. Where an employer in a "mixed motive" case proves that it would have made the same decision absent the alleged bias it has a complete defense from liability under Title VII. *See, e.g., Pennington v. City of Huntsville,* 261 F.3d 1262, 1269 (11th Cir. 2001).

### EIGHTH DEFENSE

Plaintiff is estopped and lacks clean hands to seek the equitable relief she requests due to violation of MOBIS' employee conduct and work rules including, but not limited to, poor performance and gross insubordination.

### NINTH DEFENSE

MOBIS states that it did not intentionally, willfully or maliciously violate any statute or law relied upon in the Complaint. To the extent that Plaintiff's claims against MOBIS rest on conduct that was innocent or without malice or without reckless indifference to Plaintiff's rights, punitive damages are not recoverable.

### TENTH DEFENSE

The amount of damages that Plaintiff might recover from MOBIS under Title VII is subject to the damage limitations in 42 U.S.C. § 1981(a)(B)(3).

### ELEVENTH DEFENSE

An award of punitive damages in this case is not appropriate.

### TWELFTH DEFENSE

To the extent that Plaintiff's claims are fraudulently brought, they are barred.

1092298

**THIRTEENTH DEFENSE**

To the extent that Plaintiff's claims have been waived, they are barred.

**FOURTEENTH DEFENSE**

To the extent that Plaintiff might have been guilty of conduct, as yet unknown to MOBIS or made known to MOBIS after the termination of Plaintiff's employment, which conduct would have prevented Plaintiff's employment or caused discharge, she is barred from seeking some or all damages.

**FIFTEENTH DEFENSE**

Plaintiff complains about decisions made by different decision-makers.

**SIXTEENTH DEFENSE**

The doctrine of laches bars some or all of Plaintiff's claims.

**SEVENTEENTH DEFENSE**

Defendants plead judicial estoppel and lack of standing as to Plaintiff's claims.

**EIGHTEENTH DEFENSE**

MOBIS pleads the "same actor" defense.

**NINETEENTH DEFENSE**

MOBIS maintained an effective policy against gender and pregnancy discrimination and Plaintiff failed to avail herself of the protections afforded by such policy.

**TWENTIETH DEFENSE**

Plaintiff is not entitled to recover any compensatory damages or punitive damages herein, and any allegations with respect thereto should be stricken, because Plaintiff has failed to plead facts sufficient to support such damages.

1092298

## TWENTY-FIRST DEFENSE

With respect to all of Plaintiff's claims, Defendants plead, in the alternative and without waiving any other defense, that the acts of MOBIS were privileged under the law including, but not limited to, under the employment-at-will doctrine.

## TWENTY-SECOND DEFENSE

Plaintiff's vulgarity, disruptiveness and gross insubordination upon hearing of her termination, constitute separate and independent grounds for termination, therefore, Plaintiff can recover no damages.

## TWENTY-THIRD DEFENSE

MOBIS reserves the right to assert other defenses as discovery proceeds.


s/ Henry C. Barnett, Jr.
**HENRY C. BARNETT, JR. (BAR037)**

*ATTORNEY FOR DEFENDANT*

**OF COUNSEL:**
**CAPELL & HOWARD, P. C.**
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL  36102-3069
(334) 241-8000
(334) 323-8888

1092298

## CERTIFICATE OF SERVICE

      I hereby certify that I have served the foregoing document on the following parties or attorney via CM/ECF, on this the 6th day of June, 2007:

Jay Lewis<br>
Andy Nelms<br>
Law Offices of Jay Lewis, LLC<br>
P.O. Box 5059<br>
Montgomery, Alabama 36103

                                         s/Henry C. Barnett, Jr.
                                         OF COUNSEL

1092298

# EXHIBT A

1



## INCIDENT REPORT

Statement of: Curt Bennett concerning Shalonda Gordon
Incident happened on 8-25-2006 at 7:15 am

Rodney Stovall brought Shalonda into the front conference room to discuss her performance the previous day and to tell her she was being terminated. Those present were Alan Flynn, Rodney Stovall, Wanda Davis and Curt Bennett.

As Alan started talking to her about the performance of the previous day Shalonda would not let him complete his discussion. She constantly interrupted him and wanted to blame everyone else for what had happened. Alan finally got to tell her that he himself had seen her stand with her arms crossed for 5 minutes before she even called Eric the Team Leader. Shalonda then tried to tell Alan that his Team Leaders and Supervisors stand with their arms crossed all the time and does he do anything about that? Alan stated that she was holding up the line and that was unacceptable. She then said that she could only wait for help and that she could not make anyone come and help her. Then she stated that not only do the Team Leaders and the Supervisors stand with their arms crossed but so do the relief people and what was Alan going to do about that? She also made the statement that she was a target because she was pregnant. Shalonda, at this point, was crying and getting very loud. I asked her to calm down and listen to Alan talk.

Alan then told her that she was not a target and that he had observed these things himself the day before. She wanted to argue with Alan about each item that he had brought up. Alan then said to her that she didn't have anything to do with the line being down at all yesterday. Her answer was no I did not it was everyone else's fault. I can only wait for help, she said.

1395 Mitchell Young Road, Montgomery, Alabama  36108
Office (334) 387-4800, Fax (334) 387-4900

2

Alan also brought up the fact that she let a key go down the line and did not make an attempt to get another to keep the line moving. She said that Tracy uses her key all the time and didn't know where it went. Alan then said that if that was the case then why didn't you try to find a key faster instead of standing and waiting? She claims that is what she has to do.

Shalonda was using very fowl language, saying things like "this is a bunch of shit". Once I noticed that Alan was not making any headway with this conversation I motioned for him to just end it. He then told her that because of the actions from the previous day and her performance in the past she would be taken to the next step in discipline and would be terminated at this time. Shalonda said "this mother fucking place won't last 3 years". At one point she answered her cell phone and was talking on it telling the person on the other end that "they are firing me for some mother fucking bullshit".

At that point I told Alan and Rodney to mover her outside in the front. I asked her for her badge at which time she took it off and threw it into the room. She is still on the phone while all this is taking place. They escorted her outside and I sent Wanda to get her bag and her drink from the line. Once we got that for her she then asked for her purse in her locker. She was then screaming that we better hope her baby is ok and that we were all "mother fuckers". She also had been stating that she was taking out a warrant on a girl from the floor that she claims had run into her the other day.

Once she got her purse she then asked for her check. We got her check for her and then she was told that now she must leave the property. She was yelling and screaming at all of us that this "mother fucking place was not going to last" and that we were all "mother fuckers" and that this was a bunch of shit etc.

At that point she walked to her vehicle and drove off at a very high rate of speed out of the parking lot and then on the street.

1395 Mitchell Young Road, Montgomery, Alabama   36108
Office (334) 387-4800, Fax (334) 387-4900

**EXHIBT B**

~~This Beginning is Damaging with (45) Manager~~

On August 25, 2006 Shalonda Gordon was terminated from Mobis at approximately 7:45 am. She was escorted to the outside of Mobis 1 and upon going outside the building she started shouting threats of bringing a law suit against Mobis. Referring to Mobis management as a bunch of mother fuckers. Threatening to place a warrant against Carolyn Rose for "moving or bumping" into her supposedly. Shalonda Gordon also made demands for her paycheck and termination paperwork. Shouting out demanding to know why she was not allowed to company doctor when she requested it at 10:30. After receiving her personal property she was requested to leave the company property at which time

I was Requested by Danny Mims (EHS Manager of Mobis-Alabama) to remove Ms. Shalonda Gordon from the Security Badge access program used at Mobis-Alabama

Keith Pittman
EHS Specialist Mobis-Alabama

# EXHIBT C

(Michael Milton Statement)

Shalonda Gordon Termination  8/25/06  Approx. 7:45 A.M.

On 8/25/06 @ approx. 7:45 A.M. Myself, Denny Mims & Keith Rollan noticed that Shalonda Gordon was yelling & cursing in the office area of Mobis Alabama. Obviously the reason for this was Shalonda was Terminated from Mobis Alabama. At the time this out of control behavior was noticed by the EHS Department, we quickly assisted Curt Bennett, Allan Flynn, Rodney Stovall & Wanda Davis in escorting Ms. Gordon out of the office area & off Mobis property. We (Myself, Denny Mims & Keith Rollan) approached Shalonda Gordon & instructed her to leave the office area & Mobis property. She then turned & allowed us to escort her to the outside of the building (outside of Mobis I Main Lobby) During this process Ms. Gordon was yelling, cursing & making legal threats toward Mobis Alabama as well as team members on the floor (Caroline Rose) Once outside Shalonda stated she needed her belongings out of her locker, so we allowed Ms. Gordon to stand outside, in front of the Main lobby to wait for Wanda Davis to retrieve her belongings from her locker. While Shalonda Gordon was waiting she continued the verbal threats, cursing & yelling.

Once Wanda Davis arrived with Ms. Gordon's belongings I, Michael O. Milton told Ms. Gordon "It is now time for you to leave" This was the first thing that was said to Ms. Gordon since she had been escorted outside. Once I instructed her to leave the property she stated <u>she would</u> & I could call the police to escort her if I wanted to. My reply to this was "we would if that is what it takes" Denny Mims was assisting me with this escort to her vehicle. Also Keith Rollan joined the escort. As Ms. Gordon was being escorted to her vehicle, she continued the verbal threats, & cursing toward Mobis Alabama, as well as Caroline Rose. Ms. Gordon then got into her vehicle & left the property at a high rate of speed.

Michael O. Milton   8/25/06